UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------x
PHILIP G. BARRY,

               Appellant,

     v

THOMAS PERKINS
and SALLY PERKINS,

               Appellees.
----------------------------x



Case No.: **BROOKLYN OFFICE**

1:20-cv-05050 (LDH)



-------------------------------

# APPELLANT BRIEF

-------------------------------

Philip Barry #77573-053
F.C.I.  P.O. Box 2000
Joint Base MDL, NJ 08640

## TABLE OF CONTENTS

page:

Table of Authorities . . . . . . . . . . . . . (ii)

Statement of Jurisdiction . . . . . . . . . . .   2

Statement of Issues Presented . . . . . . . . .   3

Applicable Standard of Review . . . . . . . . .   3

Statement of the Case  . . . . . . . . . . . .   4

Summary of Argument . . . . . . . . . . . . .   6

Argument

  Question One
    Whether the Bankruptcy Court failed to comply with
    its duty to award actual damages to "an individual
    injured by any willful violation of a stay"  as
    statutorily mandated by 11 U.S.C. §362(k)(1)  . . .   8

  Question Two
    Whether the Bankruptcy Court failed to draw all
    reasonable inferences in favor of the non-moving
    party         . . . . . . . . . . . . .  16

  Question Three
    Whether the Bankruptcy Court otherwise abused its
    discretion in granting the motion to dismiss the
    adversary proceeding

    A.) The Bankruptcy Court violated a compulsory
        provision of FRCP 12  . . . . . . . . .  21

    B.) The Bankruptcy Court was incorrect in finding
        that the personalty claims were required to
        be brought up in the state court foreclosure
        action to avoid a Res Judicata bar to those
        claims in the adversary proceeding  . . . .  25

    C.) The Bankruptcy Court based its decision in
        part upon credibility assessments impermissible
        on a 12(b) motion  . . . . . . . . . .  27

    D.) The Bankruptcy Court erred in citing a single
        inapposite out-of-circuit bankruptcy court
        decision as supporting a vague allusion to
        lack of standing  . . . . . . . . . .  28

    E.) The Court wrongfully disregarded credible asser-
        tions of unlawful seizure and spoliation of
        evidence    . . . . . . . . . . . . .  30

Conclusion   . . . . . . . . . . . . . .  30

TABLE OF AUTHORITIES

page:

Cases:

Amaker v. Weiner . . . . . . . . . . . . . 25
In re: American Mariner Industries . . . . . . . 3
Ashcroft v. Iqbal . . . . . . . . . . . . . 24
Bell Atlantic Corp. v. Twombly . . . . . . . . 24
Bullard v. Blue Hills Bank . . . . . . . . . . 21
In re: Bertka . . . . . . . . . . . . . 28,29
Chambers v. Time Warner Inc. . . . . . . . . . 25
In re: Crysen/Montenay Energy . . . . . . . . . 13
Dolan v. Select Portfolio Serv. Inc. . . . . . . 26
Guido et al v. Wells Fargo Bank NA . . . . . . . 26
Hoblock v. Albany Cty. Bd. of Elections . . . . . 25
Palin v. NY Times Co. . . . . . . . . . . . 24
In re: Ridgemour Meyer Properties LLC, Debtor . . . 26
Roth v. Jennings . . . . . . . . . . . . 6, 16
SM Kids LLC v. Google LLC . . . . . . . . . . 24
Soto v. Gaudett . . . . . . . . . . . . . 27
Turkmen v. Hasty . . . . . . . . . . . . . 27
Weber v. SEFCU . . . . . . . . . . . . . 10

Statutes

11 U.S.C. §350 . . . . . . . . . . . . . 14
11 U.S.C. §362 . . . . . . . . . . . . . 2,9
11 U.S.C. §362(a) . . . . . . . . . . . . 8, 10
11 U.S.C. §362(a)(3) . . . . . . . . . . . 4
11 U.S.C. §362(k)(1) . . . . . . . 3, 6, 8, 9, 11
11 U.S.C. §365 I (B) 14 & 15 . . . . . . . . 3
11 U.S.C. §521(a)(1) . . . . . . . . . . . 14
11 U.S.C. §554 . . . . . . . . . . . . 13, 14
11 U.S.C. §554(c) . . . . . . . . . . . 15, 29
28 U.S.C. §158(1) . . . . . . . . . . . . 2

( ii )

Federal Rules of Bankruptcy Procedure

  6007(a) . . . . . . . . . . . . . . . . . 14

  7001 . . . . . . . . . . . . . . . . . 2

  7012 . . . . . . . . . . . . . . . . . 21


Federal Rules of Civil Procedure

  12(b)(6) . . . . . . . . . . 7, 16, 21, 24, 27, 28

  12(d) . . . . . . . . . . 21, 23, 24, 25, 27

  56 . . . . . . . . . . . . 22, 24


Local Rules of Bankruptcy Procedure E.D.N.Y.

  6007-1 . . . . . . . . . . . . . 15

## STATEMENT OF JURISDICTION

The Bankruptcy Court (the "BK Court") for the Eastern District of New York (the "EDNY") had subject matter jurisdiction to hear the subject adversary proceeding between the Plaintiff-Debtor and the Creditor-Defendants in the underlying individual Chapter 11, converted to 7, Bankruptcy Case number 08-47352 pursuant to a standing order of reference from this District Court, 11 U.S.C. §362, and Federal Rules of Bankruptcy Procedure ("FRBP") 7001.

Jurisdiction of the Bankruptcy Court was invoked by the filing of a complaint on July 27, 2016 alleging, inter alia, willful violations of the Automatic Stay Provisions of §362 by the Defendants, the Bankruptcy Court's issuance of a summons that date, and the filing of a certificate of service of the summons on August 2, 2016. The BK Court assigned case number 1-16-01135-nhl to the proceeding.

This Court has jurisdiction to hear the instant appeal from the final judgment and order entered by the BK Court on October 7, 2020 granting the remainder of a motion to dismiss in a core proceeding pursuant to 28 U.S.C. §158(1) and the timely filing of a notice of appeal in the BK Court on October 21, 2020.

( 2 )

## STATEMENT OF ISSUES PRESENTED

1. Whether the Bankruptcy Court failed to comply with its duty to award actual damages to "an individual injured by any willful violation of a stay" as statutorily mandated by 11 U.S.C. §362(k)(1).

2. Whether the Bankruptcy Court failed to draw all reasonable inferences in favor of the non-moving party.

3. Whether the Bankruptcy Court otherwise abused its discretion in granting the motion to dismiss the adversary proceeding.

## APPLICABLE STANDARD OF REVIEW

Each of the three questions presented on appeal are subject to de novo review. Findings of law are subjected to abuse of discretion scrutiny, while findings of fact are reviewed by the clearly erroneous standard. (See In re: American Mariner Indus. (1984 CA9) 734 F. 2d 426, 12 BCD 227, 10 CBC 2d 910, CCH Bankr. L. Rptr. ¶69886 and 11 U.S.C. CH. 3 IV §365 I(B) 14 & 15.

( 3 )

## STATEMENT OF THE CASE

The subject adversary proceeding alleged multiple violations of the Bankruptcy Code's (the "Code") Automatic Stay protections for the debtor from acts of creditors. The Complaint (DE 1) alleged myriad Stay violations with respect to both real property and personalty. The real property causes of action were dismissed by order dated April 14, 2017. (DE 17) That order was the subject of earlier appeals:  Case number 1:17-CV-03078 (Dist. Ct. EDNY March 18, 2019, affirmed);  Case number 19-950 (2nd Cir. September 11, 2019, dismissed);  Case number 19-7579 (U.S. S. Ct., certiorari denied April 20, 2020).  The causes of action pertaining to the personalty were continued, until the instant appealed-from final order dated October 7, 2020 dismissed the remainder of the case.

The Complaint alleged that during the pendency of the Bankruptcy Case (08-47352 Bk. EDNY) Defendant Perkins " 'obtain[ed] possession of property of the estate, or of property from the estate... or exercised control over property of the estate.' 11 U.S.C. 362(a)(3)"  (Complaint p. 5)

While exercising dominion over the property of the estate, he then converted, transferred, negligently permitted the destruction, disposed, and sold portions or all thereof, and retained the proceeds therefrom. In doing so, he caused the termination of the Plaintiff-Appellant Debtor's proprietorship, also then a valuable asset of the estate, which had occupied the subject property continuously for a period of thirty-three years. He was also alleged to have engaged in spoliation of business records and documents of

( 4 )

of the estate, thereby precluding a goodwill sale of the busi-
ness customer lists, and which had material evidentiary rele-
vance to the subject adversary proceeding. The Complaint asserted
that in addition to meriting compensatory relief, these acts met
the criteria for punitive damages under the Code.

Exhibits attached to the Complaint, the veracity of which re-
mained undisputed throughout the proceeding, included prior sworn
statements by the Defendants which admitted to the relevant con-
duct alleged in the Complaint. These exhibits were asserted to
have provided the BK Court with direct proof of the Complaint's
allegations.

The Defendants filed an answer to the Complaint on September
9, 2016 (DE 7), then moved for dismissal of the case on March 10,
2017. (DE 14)  A motion for summary judgment by the Plaintiff-
Appellant dated March 8, 2017 was filed, (DE 15) but the court
stayed action thereon pending resolution of the dismissal motion.
The grant of dismissal on October 7, 2020 rendered the summary
judgment motion moot.

Transcripts of hearings on the dismissal motion are in the
record on appeal, along with the reading into the record of the
BK court's opinion upon which the appealed-from order granting
the remainder of the motion is predicated.

( 5 )

SUMMARY OF ARGUMENT

It will be herein shown that the BK Court erred in multiple respects when it granted the Defendants' motion to dismiss.

With respect to issue "1" it is argued that the court acted in contravention of a statutory requirement of the Bankruptcy Code. Specifically:

> "... an individual injured by any willful violation of a Stay provided by this Section **shall** recover actual damages, including costs and attorney's fees,..."

> (11 U.S.C. §362(k)(1) )
> (emphasis added)

The Complaint, and exhibits thereto, alleged, supported, and respectively provided the court with direct proof of willful violations of the Automatic Stay and resultant substantial harm to the Plaintiff. The court was required to award such damages, and therefore erred by not fulfilling its statutory obligation to do so.

Argument on issue "2" establishes that the court, as is required on a motion to dismiss, failed to "draw all reasonable inferences in favor of the non-movant" <u>Roth v Jennings</u>  489 F. 3d 499, 501 (2nd Cir. 2007)  Not only was the opposite done, i.e. numerous inferences were drawn in favor of the Movants, but several such inferences were demonstrably unreasonable and even implausible.

( 6 )

Issue "3" argues that the court made numerous procedural and discretionary errors which rose to the level of abuse of discretion. Among such errors are the misapplication and misinterpretation of Rule 12(b)(6) criteria for deciding a motion to dismiss, the principle of res judicata, the Code's Automatic Stay provisions, and the court-cited caselaw thereon.

( 7 )

ARGUMENT

QUESTION ONE

> Whether the Bankruptcy Court failed to comply with
> its duty to award actual damages to "an individual
> injured by any willful violation of a stay"  as
> statutorily mandated by 11 U.S.C. §362(k)(1).

By its appealed-from October 7, 2020 Order and Judgment, the Bankruptcy Court dismissed the subject adversary proceeding on a motion by the Defendants. The case was dismissed prior to the commencement of discovery. (DE 14 Motion to Dismiss)

The Complaint (DE 1), alleged that the Defendants, during the pendency of the bankruptcy case, had violated the Automatic Stay provisions of 11 U.S.C. §362(a) by, inter alia, the:

> "h.) Illegal conversion, disposal, sale, or through
> gross negligence permitted the destruction of prop-
> erty of the bankruptcy estate..."

(Complaint p. 7)

The Complaint then lists eighty-seven specific categories, along with quantities, of items of personalty belonging to the bankruptcy estate which met the fate cited above. (Id. p. 7-8) The Complaint also alleged that the Defendants unlawfully changed locks at the Debtor's building, thereby locking out his employees and agents and causing the termination of the Debtor's proprietor-ship. (Id. p. 5-6)  It further alleged the "negligent or willful destruction and/or disposal of his business, legal, and financial records" and the spoliation of evidence relevant to the Adversary Proceeding. (Id. p. 8-9) Substantial harm to the Debtor as a con-

( 8 )

sequence of these acts was asserted. (Id. p. 25-28)  The Com-
plaint's allegations were supported and in many instances, di-
rectly proven by the exhibits attached thereto.

The law is unequivocal as to what is required of a bank-
ruptcy court under such circumstances:

> "... an individual injured by any willful violation of
> a stay provided by this Section **shall** recover actual
> damages, including costs and attorney's fees..."

> (11 U.S.C. §362(k)(1) )
> (emphasis added)

It is significant that Congress chose the word "shall" rather
than "may" or other wording conveying of judicial discretion. In
doing so, the legislators reflected their clear intent to streng-
then bankruptcy protection and proscribe defenses and judicial
equities-balancing permitted in most other types of civil cases.
Although damage amount determination is naturally left to a court's
discretion, the awarding itself is statutorily imperative when a
stay is violated and harm ensues.

This mandate is expounded in 2nd Circuit caselaw which pre-
cludes courts in this Circuit from making the sorts of exceptions
for Stay violators that the BK court did in the appealed-from
Decision. As can be seen below, even the alleging of having acted
in good faith or with lack of intent to violate is not a viable
defense to a stay violation:

> "A creditor willfully violates Section 362 when it knows
> of the filing of the petition (and hence of the automatic
> stay), and has the general intent simply to perform the
> act found to violate Section 362; no specific intent to
> violate Section 362 is necessary. As we wrote over twenty
> years ago, 'any deliberate act taken in violation of a
> stay, which the violator knows to be in existence, jus-
> tifies an award of actual damages.' 'Whether the party

( 9 )

> believes in good faith that it had a right to the prop-
> erty is not relevant to whether the act was willful or
> whether compensation must be awarded.' Section 362(k)
> operates to compensate the debtor who has been injured
> by the violation, in line with the distribution of the
> procedural burden struck by the statute, as discussed
> above, in favor of the estate and the bankruptcy mech-
> anism."
>
>       (Weber v SEFCU 719 F. 3d; 2013 US APP LEXIS 9327)
>
>   (2nd Cir. 5/8/13)    (internal citations omitted)

In the instant case, there was no question of the Defendants'
knowledge of the Plaintiff/Appellant's bankruptcy case. They filed
a claim therein as secured creditors. (Case No. 08-47352 BK EDNY
Claim No. 3075), prior to committing the complained-of acts. Nor
is there any doubt of a clear nexus of those acts to an attempt to
collect a debt, as specified in the Code:

> "a petition operates as a stay, applicable to all entities,
> of...
> (6) any act to collect, assess, or recover a claim against
> the debtor that arose before the commencement of the case
> under this title.
>
>                         (11 U.S.C. §362(a) )

Here, the secured creditor-Defendants confirmed through coun-
sel that the proceeds of the sale of some of the estate property
were applied to debt owed on a pre-petition mortgage note:

> Mr. Rich:   ...he [Perkins] tried to get some value for them
> [Counsel for   and then credit that back towards the money owed
> Defendants]    on the mortgage. He went through multiple channels
>               and wound up selling them for $2,000.00 to some-
>               body, basically it was worthless... he credited a
>               little bit towards the mortgage.
>
>   (Hearing on motion to dismiss Tr. 3/28/17 DE 20, p. 19-20)

The requirement that acts against the debtor or bankruptcy
estate be related to collection of a debt is therefore also met.
Consequently, the BK court was presented with a prima facie Stay

( 10 )

violation for which §362(k) requires the recovery of at least
actual damages. Rather than doing accordingly however, the BK
court made several novel and questionable findings:

> "...in June 2011 the trustee explicitly gave the defen-
> dants permission to dispose of the personal property
> via email. See motion to dismiss Exhibit E. Accordingly
> the plaintiff's claim is not plausible in this respect."
>
> (Tr. Decision discussion 10/1/20 p. 8-9)

The problems with this finding are manifold. First, the email
is not from the trustee, but an attorney at his firm who is cor-
responding with a previous attorney for the Defendants. As such,
it is hearsay and would have limited or no evidentiary admissibil-
ity. Nor does it say what the court claimed above. This email,
dated December 21, 2011 states:

> "I talked to the Trustee and he confirmed that we will
> not object to the foreclosure proceeding and that the
> **boxes of tapes** may be disposed."
>
> (Motion to Dismiss DE 14 Exhibit "E")
> (emphasis added)

Accordingly, even if this purported permission from the Trus-
tee was legal—which it was not as will be shown infra— it only
covered one of the eighty-seven categories of personalty which
the Complaint alleged vanished from the bankruptcy estate at the
hands of the Defendants. It was clearly not blanket "permission
to dispose of [all] the personal property." (Tr. Decision p. 8-9)

This distinction was in fact an express concern of the court
itself in a hearing on the motion to dismiss:

> THE COURT: Is there any disagreement to the description?
> You talked in terms of some tapes. The descrip-
> tion in the complaint sits on page 7 to 8,
> illegal conversion -- the allegation.

( 11 )

"Illegal conversion, disposal, sale, or through gross negligence permitted the destruction of property of the bankruptcy estate located in the building at 8126 5th Avenue, Brooklyn, New York on the second floor and portions of the first floor and basement thereof, including, but not limited to," and then there's a long description. "Business inventory, including over 40,000 sound[ ] video recordings, books, including numerous author inscribed and/or autographs, collectibles, including numerous [ ] recording artists, celebrity, public figure autographed items, limited quantity radio station only, special version sound recordings, numismatic and philatelic items, precious metals, semiprecious stones, business equipment, including" -- okay It goes on and on to eight. So --

MR. RICH: Yeah, Judge, there was --
[Defend.'s Atty]

THE COURT: --you just talked in terms of some tapes

MR. RICH: Right, because --

THE COURT: And that's -- this is a description which is, you know, much more --

MR. RICH: There's a --

THE COURT: Much more expansive than tapes, so.

MR. RICH: I mean there's allegations that there were coins and stamps of value.

THE COURT: No, but there's this very long list --

MR. RICH: Yes.

(Tr.Hearing 5/11/17 DE 19 p. 7-9)

Here we see the court emphatically going back and forth with counsel for the Defendants with respect to the variance between what the Defendants were claiming to have received permission to dispose of, and the enumerated items in the Complaint. Yet, inexplicably between the time of the hearing and the decision, the court's concern and cognizance of the divergence between the two seems to have vanished. There was moreover, no intervening testimony, discovery, or any event whatsoever which could explain the court's about-face, nor which would furnish any rationale for this curious decision basis.

( 12 )

Any ground for absolving the Defendants of liability based upon their having acted on advice of counsel is also unavailing:

> "The enactment of subsection (h) granted bankruptcy courts an independent statutory basis apart from their contempt power to order sanctions against violators of automatic stays. Creditors' alleged good-faith reliance on advice of counsel that stay had been validly terminated was not defense to claim brought by debtor for actual damages based on creditors' alleged willful violation of stay."
>
> (In re: Crysen/Montenay Energy 902 F. 2d 1098; 1990 US App. LEXIS 7797 (2nd Circuit May 9, 1990))

The court had also engaged the Plaintiff/Appellant in a colloquy on whether the Trustee had the authority to grant the permission reflected in the email exhibit:

THE COURT: Now as a matter of law... I mean there wasn't a specific abandonment... but the trustee, according to what was submitted by the Perkins' attorney, appears to have abandoned it to the creditor -- to the Perkins... Trustee can abandon property to whoever he or she abandons it to... Sometimes it's abandoned to the debtor, sometimes it's abandoned to somebody else so I'm trying to understand your claim.

.   .   .

MR. BARRY: As far as the abandonment of the property, if he did abandon property, even taking their exhibits at face value, it refers only to boxes of tapes, and so there's an attempt to minimalize what the items were... and if the trustee had determined it was [of no] consequential value to the estate he still would have had to under Rule 554 have a notice and hearing. He can't just abandon property [to] a third party without a notice and hearing.

.   .   .

even if the trustee had intended to abandon everything that was in there, he couldn't have legally done so without a notice and hearing under Rule 554 and also there's the local rules requiring extensive documentation...

(Tr. Hearing 5/11/17 DE 19 p. 21-24, 28)

( 13 )

The United States Code Section[1] and Rules referred to in the above-cited hearing are as follows:

"§554. Abandonment of property of the estate

(a) **After notice and a hearing,** the trustee may abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate.

(b) On request of a party in interest and **after notice and a hearing,** the court may order the trustee to abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate.

(c) Unless the court orders otherwise, any property scheduled under section 521(a)(1) of this title [11 USCS §521(a)(1)] not otherwise administered at the time of the closing of a case is **abandoned to the debtor** and administered for purposes of section 350 of this title [11 USCS §350].

(d) Unless the court orders otherwise, property of the estate that is not abandoned under this section and that is not administered in the case **remains property of the estate.**"

(11 U.S.C. §554)
(emphases added)

" Rule 6007. Abandonment or Disposition of Property

(a) Notice of proposed abandonment or disposition; objections; hearing. Unless otherwise directed by the court, the trustee or debtor in possession shall give notice of a proposed abandonment or disposition of property to the United States trustee, all creditors, indenture trustees, and committees elected pursuant to §705 [11 USCS §705] or appointed pursuant to §1102 of the Code [11 USCS §1102]. A party in interest may file and serve an objection within 14 days of the mailing of the notice, or within the time fixed by the court. If a timely objection is made, the court shall set a hearing on notice to the United States trustee and to other entities as the court may direct."

(Federal Rules of Bankruptcy Procedure Rule 6007(a) )

---

1. Erroneously referred to as a rule during the hearing.

( 14 )

" Rule 6007-1   ABANDONMENT OR DISPOSITION OF PROPERTY

Notice of a proposed abandonment or disposition of property pursuant to Bankruptcy Rule 6007(a) shall describe the property to be abandoned or disposed of and state the reason for the proposed abandonment or disposition.

(Local Rules Bankruptcy Court EDNY Rule 6007-1)

Whereas there was no such notice and hearing (Case No. 08-47352 BK. EDNY), there was no "abandonment" of the subject personalty. Consequently, pursuant to 11 U.S.C. 554(c) cited above, it remained property of the bankruptcy estate.

Furthermore, as a practical matter, any practice which would allow property to leave the bankruptcy estate via a private email exchange between two attorneys, would seriously undermine confidence in the integrity of the bankruptcy process, the bankruptcy courts, and the juduciary in general. This is no mere speculative danger. The Official Committee of Unsecured Creditors' objections to the Trustee's Final Report (Hearing date May 8, 2013; 08-47352 BK EDNY), convey a sense of deep mistrust on behalf of hundreds of unsecured creditors for the process and the trustee, based in part on the disposition of the subject personalty here. They rightfully question why unsecured property was somehow allowed to wind up in the hands of a secured creditor.

Said mistrust by those creditors who are also parties of interest to the subject adversary proceeding would only be exacerbated should the BK court's tacit approval of this unlawful out-of-court surreptitious arrangement, implicit in the appealed-from Decision, be permitted to stand.

( 15 )

QUESTION TWO

Whether the Bankruptcy Court failed to draw all
reasonable inferences in favor of the non-moving party.

The BK court granted the Motion to Dismiss pursuant to
F.R.C.P. Rule 12(b)(6): "For the reasons to be discussed the
court finds that the personal property arguments and the com-
plaints are dismissed pursuant to Rule 12(b)(6)" (Tr. 10/1/20 p. 5)

As the court acknowledged however:

> "...reviewing the motion to dismiss the failure to state
> a claim, the court accepts factual allegations of in the
> complaint as true, and draws all reasonable inferences
> in favor of the non-[movant]. Roth v. Jennings 489 F.
> 3d 499, 501 (2d Cir. 2007)."

(Id. p. 6)

Contrary however to the court's perfunctory recitation of
this controlling caselaw, the record shows that in deciding the
motion, the court did the opposite.

As discussed in "Question One" supra., central to the Defen-
dants' Motion to Dismiss, with respect to the personalty, was that
the Trustee "further advised to dispose of the boxes of tapes at
the property." (Motion to Dismiss DE 14 p. 3)  "I was given ex-
plicit direction by the Trustee that the boxes of tapes could be
disposed.(See Ex. E)" (Id. Decl. of Thomas Perkins p. 3)

In the referenced Exhibit "E" the word "tapes" is mentioned
three times in the inquiry email and once again in the response
from the attorney working at the Trustee's law firm. No other
specific item is mentioned in either. The inquiry also states:
"Mr. Barry claimed that he had $390,000 of 'inventory' located at
the Brooklyn property which apparently was his valuation of the

( 16 )

boxes of tapes. My clients would like to recover possession of
the apartments and basement where the boxes of tape are located
and dispose of the property."

The following are reasonable inferences drawn from the above-
quoted motion papers and exhibit:

1.) "Boxes of tapes" is a very specific term and does
   not refer to any other type of property.

2.) That the Trustee was purposefully misled into the in-
   correct beliefs that "boxes of tapes":

   a.) Were the only personalty in the premises.
   b.) Were of de minimis quantity— not the more
       than twenty-two thousand as reflected in
       the Defendants' own invoice and accounting.
       (Complaint Ex. "J" & "K")

   c.) Were somehow lawfully in possession of the
       Defendants.

   d.) Were substantially all that remained of the
       $390,000.00 inventory valuation from the
       bankruptcy petition more than 3 years earlier.

3.) That the Trustee intended and believed that he was
   only giving permission (albeit unlawfully) to dis-
   pose of boxes of tapes.

4.) That the Trustee, a veteran highly-experienced member
   of the Trustee Panel, would not have knowingly given
   extra-judicial permission for the transfer or disposal
   of, inter alia, a debtor's: safes, cash, clothing,
   shoes, family mementos, heirlooms, other irreplaceable
   items sentimental value, and family photos. (Complaint
   p. 7-8; Tr. Hearing 5/11/17 p. 28)

It is furthermore a reasonable inference to draw from the
hearing transcripts that the indefinite and inconsistent state-
ments, sometimes only minutes apart, from counsel for the Defen-
dants with respect to the Trustee, reflected a lack of actual

( 17 )

knowledge or even a reasonably grounded belief, and were there-
fore not creditable:

    MR. RICH:  They went, they investigated the inventory.
                       (Tr. Hearing 3/28/17 p. 18)
    MR. RICH:  The trustee had an opportunity, looked at all
               the property on the premise. (Tr. 5/11/17 p. 5)

    MR. RICH:  agents of the trustee **presumably** thoroughly in-
               spected everything (Id. p. 6) (emphasis added)

    MR. RICH:  **presumably** the trustee and their agents inspected
               everything in the property (Id. p. 9) (emphasis added)

    THE COURT: Was there ever an inventory taken as far as you
               know?
    MR. RICH:  Was there an inventory taken
MR PERKINS:    No
    MR. RICH:  Not to my knowledge     (Id. p. 10)


    It being the case that the Plaintiff/Appellant had the best
basis to know, it was a reasonable inference that his statements
on this question were true:

    MR. BARRY: ...the trustee had never been to the building...
               as far as I know, the trustee and no one working
               for the trustee ever saw the inventory.
                       (Id. p. 15)

    After having admitted twice that he was presuming, Defendants'
counsel nonetheless responded to Barry's emphatic statement by
reprising the earlier definitive versions of his story:

    MR. RICH:  ...The trustee went there, inspected it, looked at
               everything and made a determination.
                       (Id. p. 32)


    To decide as it did and on the grounds as stated, the court
could not have, as required, drawn the above-stated reasonable
inferences, and in fact, contrary to prevailing Circuit caselaw,
drew opposite inferences, i.e. in favor of the moving party:

( 18 )

"...the trustee gave the defendants permission to
dispose of the personal property on the premises
via email. See motion to dismiss Exhibit E."

(Tr. Decision 10/1/20 p. 8-9)

Given that the court was required to treat the Complaint's
allegations as true for purposes of a motion to dismiss, it was
additionally a reasonable inference that this is a case of a
secured creditor who took advantage of his physical access to
property of the estate in conjunction with the absence of the
incarcerated Debtor, to loot the property of the estate. Doing
so further victimized the unsecured creditors, many of whom were
and are still suffering severe financial hardship due to the
collapse of the Debtor's investment business entities.

The Debtor's proprietorship, Barry Publications, which had
thrived in the same location for 34 years, and the orderly sale
of its inventory which had been bringing in several thousands of
dollars per week, would have brought desperately needed relief
for creditors, for some of whom, just small amounts of money
would have brought significant relief and improvement in their
lives.

Whereas the Debtor voluntarily waived discharge of debt, it
is reasonable to infer that this relief could have continued
indefinitely after the final decree, i.e. the closing of the
bankruptcy case.

If the BK court had drawn these reasonable inferences as re-
quired, then the equities and need for fairness in the bankruptcy
process would have impelled the court to permit the case to pro-
ceed past the motion to dismiss stage, so that the veracity of

( 19 )

the above inferences could have been ascertained. And, as the
Complaint requests that no damages be remitted to the Debtor
himself, the unsecured creditors would have been afforded some
belated justice and relief as requested.

> "...in the event that this court awards damages in
> pecuniary form to the Plaintiff, that such damages
> be ordered payable to the bankruptcy estate, and
> that an order be issued to re-open the bankruptcy
> case for the purpose of administration and distri-
> bution of those funds."
>
> (Complaint p. 28)

Whereas the BK court incorrectly failed to draw these reason-
able inferences, nor any inferences whatsoever in favor of the
Plaintiff/Appellant, this Court is empowered to reverse the ap-
pealed-from Decision on this basis alone, thereby giving rise to
the possibility of some relief to the unsecured creditors in the
underlying bankruptcy case.

( 20 )

## QUESTION THREE

Whether the Bankruptcy Court otherwise abused its discretion in granting the motion to dismiss the adversary proceeding.

The BK court granted the Defendants' motion to dismiss pursuant to the Federal Rules of Civil Procedure ("FRCP") Rule 12(b)(6):

"For the reasons to be discussed the court finds that the personal property arguments and the complaints are dismissed pursuant to Rule 12(b)(6) made applicable by Bankruptcy Rule 7012..."

(Tr. Decision October 1, 2020 p. 5)

Any question as to the nature of adversary proceedings and the applicability of the FRCP was cleared up by the High Court:

"[Adversary proceedings are] essentially full civil lawsuits carried out under the umbrella of [a] bankruptcy case."

(Bullard v Blue Hills Bank 575 US 496, 505, 135 S. Ct. 1686, 191L. Ed. 2d 621 (2015))

It will be herein shown that in addition to the issues discussed in Questions "One" and "Two" supra., the BK made serious procedural and discretionary errors in the granting of the motion to dismiss.

A.) The Bankruptcy court violated a compulsory provision of FRCP Rule 12.

Rule 12(d) states:

"Result of Presenting Matters Outside the Pleadings. If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the **motion must be treated as one for sum-**

( 21 )

mary judgment under Rule 56. All parties must be
given a reasonable opportunity to present all the
material that is pertinent to the motion."

> (Fed. R. Civ. P. 12(d) )
> (emphasis added)

The subject motion to dismiss presented the following
extrinsic state court matter:

> "39. This proceeding relates to New York State judgments,
> thus New York's res judicata doctrine controls.
>
> 40. ...res judicata bars litigation of any claims that
> were or could have been asserted in the prior action.
> It also bars defenses that might have been litigated
> in the prior action, whether or not those defenses were
> actually raised. In New York, res judicata requires a
> showing that (1) the previous action involved an adjudi-
> cation on the merits; (2) the previous action involved
> the party against whom res judicata is invoked or its
> privy; and (3) the claims asserted were or could have
> been asserted in the previous action.
>
> 41. Res judicata should be found to apply herein, as all
> of the elements have been met. The foreclosure action
> was an adjudication on the merits, the parties are the
> same, and all of the plaintiff's claims relate to and
> could have been asserted in the foreclosure action.
>
> 42. Accordingly, since the State Court has already de-
> cided these issues, res judicata should be found to apply
> and plaintiff's complaint should be dismissed."

> (Motion to Dismiss p. 8-9)
> (citations omitted)

Whereas this state court action, and in particular, the
question of counterclaims thereto, was an outside matter and
the BK court did not exclude it, Rule 12(d) required the court
to convert the motion to a Rule 56 summary judgment motion.
Notably, this requirement is not found in a separate rule, but
in a sub-paragraph of the same rule under which the court dis-
missed the case. The court compounded its error by supporting
its decision with findings with respect to the state case:

( 22 )

"Here, res judicata applies to the personal property
claims. First there are two final judgments...This
the first element of res judicata is satisfied...
The third element is also satisfied... The plaintiff
alleges that the defendants improperly disposed of
the personal property located within 477 82nd Street
between June 2007 and January 2013.[1] Therefore these
claims should have been raised in the previous State
Court action which occurred after the time period in
which the allegations occurred."

(Tr. Decision Oct. 1, 2020 p. 6-7)

[1. The Complaint states: "commencing in or about June 2011..."]

With respect to the "first element of res judicata," the
court made a finding that there was an adjudication on the
merits in the state court case counterclaims. It did so without
evidentiary basis, and without an opportunity for the Plaintiff
to provide evidence to the court on that question— an essential
element of Rule 12(d). Furthermore, being that 12(d) is intended
to insure fairness to the parties and due process, non-compliance
therewith is a self-actuating harm. Consequently, no further
showing of prejudice is needed to establish the violation as a
reversible error. Even assuming arguendo that a prejudice showing
was required, it can be done. The transcript of a hearing in the
state court proceeding was clearly part of "all the material that
is pertinent to the motion," (Rule 12(d) ) and would have shown
the BK court that the relevant claims in the subject adversary
proceeding were not adjudicated on the merits in state court.

For the "third element," the court made a finding that "these
claims should have been raised in the previous State Court action"
(Tr. Decision 10/1/20 p. 6-7) Implicit and integral in this finding
is that the claims were not raised in that action. Although the
Plaintiff/Appellant only learned of many of the specifics of the
claims through, and mostly near the end of, the state action, the

( 23 )

causes of action of the adversary proceeding were essentially
brought up as counterclaims in the state court action. Accordingly,
had the court complied with Rule 12(d), evidence thereof would have
been presented, and this factual and decisional error would have
been averted.

The Second Circuit is very rigorous in enforcing Rule 12(d)
compliance:

> "Rule 12(d)...presents district courts with only two options:
> (1)"the court may exclude the additional material and decide
> the motion on the complaint alone" or (2)"it may convert the
> motion to one for summary judgment under Fed. R. Civ. P. 56
> and afford all parties the opportunity to present supporting
> material."
> The district judge took neither permissible route under
> Rule 12(d). The judge both relied on matters outside the
> pleadings to decide the motion to dismiss and did not con-
> vert the motion into one for summary judgment. To the con-
> trary, his aim was explicit: to determine whether Palin's
> complaint stated a plausible claim for relief under Rule
> 12(b)(6).             .    .    .
>
> despite the flexibility that is accorded district courts to
> streamline proceedings and manage their calendars, district
> courts are not free to bypass rules of procedure that are
> carefully calibrated to ensure fair process to both sides.
> The procedural path followed by the district court conforms
> to neither of the two options permitted by Rule 12(d).
> While we are cognizant of the difficult determinations that
> Twombly and Iqbal often place on district courts, the dis-
> trict court's gatekeeping procedures must nevertheless com-
> ply with the Federal Rules of Civil Procedure.
> For the reasons stated above, we VACATE and REMAND the
> judgment of the district court for further proceedings
> consistent with this opinion."
>
>     (Palin v. NY Times Co. 940 F. 3d 804(2nd Cir. Aug. 6, 2019)
>
> "if the district court received and elected not to exclude
> matters outside the pleadings, Rule 12(d) presented it with
> only two options: exclude the additional material or convert
> the motion to one for summary judgment...
> We have no doubt that the able district judge's approach
> was animated by entirely understandable concerns of effici-
> ency intended to save the time and resources of the parties
> and the court. But rules matter, and procedural regularity
> and evenhandedness matter as well... the judgment of the
> district court is VACATED, and the case is REMANDED..."
> (SM Kids LLC v Google LLC 963 F. 3d 206 (2nd Cir. June 25, 2020) )
>                         (internal citation omitted)

( 24 )

"This [Rule 12(d)] conversion requirement is "strictly enforced" whenever a district court considers extra-pleading material in ruling on a motion to dismiss. Friedl, 210 F. 3d at 83 (quoting Amaker v. Weiner, 179 F. 3d 48, 50 (2d Cir. 1999) ).
Consideration of extraneous material in judging the sufficiency of a complaint is at odds with the liberal pleading standard of Federal Rule of Civil Procedure 8(a)(2), which requires that the complaint contain 'a short and plain statement of the claim showing that the pleader is entitled to relief.'...
Also, when a district court considers certain extra-pleading materials and excludes others, it risks de-priving the parties of a fair adjudication of the claims by examining an incomplete record. In contrast, on sum-mary judgment the court is required to consider all rel-evant, admissible evidence submitted by the parties and contained in 'pleadings, depositions, answers to inter-rogatories, and admissions on file, together with... affidavits...' Fed. R. Civ. P. 56(c)"

(Chambers v. Time Warner Inc. 282 F. 3d 147 (2nd Cir. 2/21/02) )

As shown in the above-cited cases, caselaw in this Circuit requires a reversal of the BK court's decision on the grounds of Rule 12(d) non-compliance.

B.) The BK court was incorrect in finding that the personalty claims were required to be brought up in the state court foreclosure action to avoid a Res Judicata bar to those claims in the adversary proceeding.

As seen supra, the BK court based its decision in part on a finding that the subject claims should have been brought up as counterclaims in the New York State court foreclosure action, but were not, thus triggering the doctrine of res judicata.

Standing caselaw states otherwise with respect to New York State court counterclaims:

"New York law governs the preclusive effect of a New York state court judgment in federal court. Hoblock v. Albany Cty. Bd. of Elections, 422 F. 3d 77, 93 (2d Cir. 2005)...

( 25 )

the Debtor asserts that Goetz Fitzpatrick should have counterclaimed for its fees and expenses in the Malpractice Action, and the failure to do so precludes the allowance of the Claim by this Court. I disagree. 'New York is a permissive counterclaim jurisdiction.' New York's permissive counterclaim rule preserves the right of a party to bring a claim that it could have brought as a counterclaim in a prior action as long as doing so would not 'impair the rights or interest established in the first action.' Consequently, res judicata does not bar the assertion of a permissive counterclaim in a subsequent action... under New York law, res judicata does not bar claims that could have been raised as counterclaims in a prior action. [T]he failure to interpose a counterclaim does not prevent subsequent maintenance of an action based on that claim because [i]n New York all counterclaims are permissive. [A]bsent a compulsory counterclaim rule, a pleader is never barred by claim preclusion from suing independently on a claim that he refrained from pleading as a counterclaim in a prior action. To hold otherwise would have the effect of rendering New York a compulsory counterclaim jurisdiction because any counterclaims not asserted would be barred in subsequent actions. Dolan v. Select Portfolio Serv. Inc. No. 13-CV-1552(PKC), 2014 U.S. Dist. LEXIS 132216, 2014 WL 4662247, at 3 (E.D.N.Y. Sept. 18, 2014)."

> (In re: Ridgemour Meyer Properties, LLC, Debtor
> Case No. 08-13153; 2016 Bankr. LEXIS 3502
> (Bankruptcy Court for the SDNY September 27, 2016))
> (some internal citations, quotes omitted)

The following case circumstances are remarkably analogous to the subject adversary proceeding here:

> "Wells Fargo asserts that the Guidos are precluded from asserting the claims set forth in the Amended Complaint by res judicata and collateral estoppel because (i) the claims in the instant action arise from the same 'transaction' as did those in the Foreclosure Action, (ii) the Guidos raised certain of the claims they now raise as defenses in the Foreclosure Action, and (iii) the Guidos could have asserted these claims as counterclaims in the Foreclosure Action. Wells Fargo is wrong because the Guidos were not required by New York law to file counterclaims in the Foreclosure Action, and the causes of action in the Amended Complaint were not adjudicated in the Foreclosure Action."

> (Guido et al v Wells Fargo Bank NA 16-CV-1568; 2017
> U.S. Dist. LEXIS 223102 (March 21, 2017 SDNY))

Accordingly, the BK court decision should be vacated on the basis of misapplication of res judicata doctrine.

( 26 )

C.) The Bankruptcy Court based its decision in part upon
     credibility assessments impermissible on a 12(b) motion.

This Circuit's caselaw prohibits credibility assessments on
a motion to dismiss. (12(b)(6) ) :

> "...reliance on any assertion of fact requires a creditability
> assessment that we are fundamentally unsuited to undertake
> at the 12(b)(6) stage"
> (Turkmen v Hasty 789 F. 3d 218 (2nd Circuit June 17, 2015) )

Even if the court had complied with Rule 12(d) by converting the
motion to summary judgment, the wider criteria for deciding such a
motion still excludes credibility assessments:

> "In deciding such a motion, the court cannot properly make
> credibility determinations or weigh the evidence...a district
> court generally cannot grant summary judgment based on its
> assessment of the reliability of evidence presented.
> (Soto v Gaudett 862 F. 3d 148 157 (2nd Cir. 2017) )
>                      (internal citations omitted)

In making the appealed-from decision, the BK court was faced with
contradictory statements on the record with respect to counterclaims
in a state court proceeding:

> MR. RICH: If anything it could have been raised as a defense in
>            a deficiency. Nothing was done...
>            the claims of plaintiff could have been dealt with in
>            the state court. These were not specifically alleged
>            in the state court proceeding.
>            (Tr. Hearing, Motion to Dismiss 5/11/17 p. 7, 11)

> MR. BARRY: This was brought up numerous times in the state court
>            proceeding...
> THE COURT: You made a counterclaim in the state court proceedings?
> MR. BARRY: Yes. I raised it as a counterclaim.
>                                   (Id. p. 11, 12)

As seen below however, the court treated the Defendants' attorney
statement as credible and dispositive of the question:

> THE COURT: Therefore these claims should have been raised in the
>            previous state court action.
>                      (Tr. Decision 10/1/20 p. 7)

( 27 )

The court not only improperly made a credibility assessment on a 12(b)(6) motion, it did so in favor of the moving party, and furthermore came down on the wrong side of the facts of the question as the state court public record would show. This compound error constitutes ample grounds for vacatur of the appealed-from decision.

D.) The Bankruptcy Court erred in citing a single inapposite out-of-circuit bankruptcy court decision as supporting a vague allusion to lack of standing.

Although the BK court did not make an express finding that the Plaintiff lacked standing to bring the subject action, it did suggest to that effect:

THE COURT: As a threshold matter, a debtor generally cannot have standing to challenge the automatic stay as to the estate's interest in property after the debtor's discharge is either denied or granted. See In re: [Bertka] 2010 Westlaw 2756964, Bankruptcy Eastern District of Virginia, July 12, 2010.
Quote, the trustee however is the representative of the estate as normally a debtor does not have standing to oppose relief from the stay with respect to the estate's interest in the property, end quote.

(Tr. Decision 10/1/20 p. 8)

No motion for relief from the Automatic Stay with respect to the personalty was ever made in the underlying case to "challenge" or "oppose relief from." (08-47352 Bk EDNY) Being that the case was closed, there was no longer a trustee at the time of the filing of the Complaint. The Complaint alleged a violation of the Automatic Stay— not a challenge to it or opposition to relief therefrom.

The court-cited case concerned a motion by a mortgagee bank for relief from the Stay on consent of the trustee in a still open case. The debtor's statement of intention to reaffirm the debt to Wells Fargo after discharge complicated the matter. Given these

( 28 )

factors, the Bertka case is wholly inapposite to the issues here.

A debtor is the quintessential party of standing to bring an action for violation of the Stay. A debtor is normally the aggrieved party when the Stay, which protects both the property of the estate and the debtor, is violated through acts against assets directly. This holds true both in the absence of discharge, when estate property can serve to equitably reduce indebtedness, and in any case when estate property reverts back to the debtor at the end of the case. "Unless the court orders otherwise, any property... not otherwise administered at the time of the closing of the case is abandoned to the debtor." 11 U.S.C. 554(c)

Even if there was any merit to the trustee vs. debtor standing issue here, its application would be exceedingly inequitable given the following pre-trial conference exchange:

MR. BARRY: And the one other item, then, is the request for appointment of a guardian ad litem or alternately an attorney from the trustee panel, particularly because of-- as you mentioned-- the difficulty of pursuing discovery from my present location.

                       .    .    .

THE COURT: ...So you're going to seek to have me--- make a motion before me for a guardian... I have not seen that since I've been on the bench, but I'll look into it...

MR. BARRY: Or alternatively, a trustee to prosecute the--

THE COURT: No, it would not be a trustee.

MR. BARRY: Oh. All Right.

THE COURT: Again, there would not be a trustee,... the trustee closed the case, he abandoned whatever he didn't administer and he closed the case.

                 (Tr. Pre-trial Conference 12/13/16 p. 10,13)

As seen, the Plaintiff requested and was denied appointment of a trustee to prosecute the case, then nearly four years later, the court intimates that only a trustee had the standing to do so. The law and equity combine to invalidate this implied decisional ground.

( 29 )

E.) The Court wrongfully disregarded credible assertions of
     unlawful seizure and spoliation of evidence.

It was alleged that Defendant Perkins illegally seized and
spoliated evidence relevant to the subject adversary proceeding.
This documentary evidence was taken from the Plaintiff's building.
(Complaint p. 8-9, 15-16) On a motion to dismiss, the court was
required to accept these allegations as true. The allegations were
supported by direct proof thereof. (Complaint Exhibit "I")

By ignoring this allegation and the reasonable inference that
its absence had a deleterious effect on the Complaint and proceedings,
the court permitted the Defendants to benefit in court from their
wrongdoing— an injustice which this Court should not allow to
stand, as it affected the integrity of the proceedings by ceding
near exclusive control of the facts and evidence to one party.


## CONCLUSION

For the clear substantial procedural, factual, and equitable
errors as shown herein, this Court should vacate the judgment and
remand for further proceedings consistent with its opinion.

Dated: March 26, 2021

Philip Barry
Plaintiff-Appellant pro se

( 30 )

## CERTIFICATE OF SERVICE

I, the undersigned Philip Barry hereby affirm under penalty of perjury that a true copy of the Appellant Brief in case no. 1-20-cv-05050(LDH) was deposited in the outgoing inmate mail on March 26, 2021. It was addressed to the attorney for the Appellees, Jared Rich; 44 Court Street Suite 917, Brooklyn, NY  11201 with sufficient First Class Postage affixed.

Dated: March 26, 2021

_____
Philip Barry

PHILIP BARRY # 77573-053
FEDERAL CORRECTIONAL INSTITUTION
P.O. BOX 2000
oint Base MDL, NJ  08640



↔ 77573-053 ↔
Pro Se Clk Us District Court
225 Cadman PLZ E
Brooklyn, NY 11201
United States

Trenton POST FIRST-CLASS MAIL
FRI 26 MAR 2021 PM

